**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MILAGROS ORTIZ-NIEVES<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID BERNHARDT, Secretary of Interior of the United States,<br><br>*Defendant.* | CIVIL NO. 19-2085 (DRD) |

**OPINION AND ORDER**

Before the Court is Defendant's *Motion for Summary Judgment* (Docket No. 23), the *Statement of Uncontested Material Facts* (Docket No. 24) and a *Memorandum of Law in Support of the Motion for Summary Judgment*. (Docket No. 25). Plaintiff duly opposed said motion. See, Docket No. 32-33. Defendant replied thereto. (Docket No. 42).

Upon review, and for the reasons stated herein, the Court hereby **GRANTS** Defendant's *Motion for Summary Judgment*. See, Docket Nos. 23-25.

**I.   BACKGROUND**

Plaintiff Milagros Ortiz Nieves (hereinafter, "Plaintiff") is employed by the U.S. Department of the Interior, U.S. Geological Survey, Southeast Region, for the Caribbean-Florida Water Science Center in San Juan Puerto Rico (hereinafter, the "Agency"). On November 21, 2019 Plaintiff filed the instant complaint, wherein Plaintiff claims she was allegedly subject to a pattern of discrimination in her workplace on the basis of her national origin. Plaintiff is Puerto Rican. *See*, Docket No. 1. Specifically, Plaintiff brought the instant action pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e-16. Defendant argues that Plaintiff's claims warrant summary dismissal because: "(1) she failed to timely exhaust administrative remedies;

(2) she cannot establish a prima facie case of discrimination because she did not suffer any adverse action; (3) Plaintiff cannot establish that the Agency's legitimate nondiscriminatory reasons are pretextual; (4) plaintiff's work environment was not objectively hostile, as defined by law." (Docket No. 25 at 1)

## II.   STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).  Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law."  Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997).  A fact is "material" where it has the potential to change the outcome of the suit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence.  Id.  Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id.

After the moving party meets the burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts."  Cortes-Irizarry v. Corporacion Insular, 11 F.3d 184, 187 (1st Cir. 1997). At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor.  Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997).  "Credibility determinations,

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. See Poller v. Columbia Broad. Sys., 369 U.S. 470, 473, 82 S.Ct. 486 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); see also Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781 (1982)("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000)(finding that "determinations of motive and intent . . . are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." Rodríguez v. Municipality of San Juan, 659 F.3d 168, 178-179 (1st Cir. 2011)(internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 85 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] . . . we will not draw unreasonable inferences or credit bald assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010)(internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)(internal citations omitted).

Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. See D.P.R. CIV. R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material

properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); see also Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.").

### III.   UNCONTESTED FACTS

1. Plaintiff has been the Administrative Operations Assistant GS-0303-7, for the Caribbean - Florida Water Science Center (hereinafter, "CFWSC"), U.S. Geological Survey, U.S. Department of the Interior" since December 2009 to the present. (Docket No. 24 ¶1 and Docket No. 1 at ¶12)

2. Plaintiff is Puerto Rican. (Docket No. 24 ¶2 and Docket No. 1 at ¶13)

3. The CFWSC mainly operates from its Lutz, Florida offices, and maintains a small office in Puerto Rico staffed by two persons from the Administrative Unit, one of whom is the Plaintiff". (Docket No. 24 ¶4 and Docket No. 1 ¶ 16)

4. Scott Padgett (hereinafter, "Mr. Padgett") has been Plaintiff's first line supervisor since he became the Center Management Officer on October 1, 2014. (Docket No. 24 ¶5 and Docket No. 1 at ¶17)

#### A. PROMOTION

5. Plaintiff was seeking the position of Program Analyst GS-9. (Docket No. 1 at ¶ 26)

6. By February 2016 Mr. Padgett intended to advertise two positions: (1) Program Analyst GS-9 which was a new position meant to attempt to expand the office personnel structure, and (2) Budget Analyst GS-9 to fill a vacancy left by the retiring Budget Analyst. (Docket No. 24 ¶8)

7. On April 2016, Plaintiff's position (Budget Analyst GS-9) was withdrawn and "put on hold" (Docket No. 24 ¶10 and Docket No. 1 at ¶ 31)

8. Mr. Padgett met with Plaintiff on November 2016 to discuss her performance appraisal and "[he] asked her if [he] had ever promised her a specific job and she admitted [he] had not." Exhibit 1, P18-19/Q36. (Docket No. 24 at ¶15)

## B. BILLING INSTRUCTIONS

9. On May 2016, Center management initiated a discussion with higher level managers within USGS regarding how to handle outstanding debts and future financial agreements with Puerto Rico. (Docket No. 24 ¶16)

10. Mr. Padgett met with employees in the Receivables Branch of USGS and discussed these issues with them as well as with other management officials within USGS. (Docket No. 24 ¶17)

11. Mr. Padgett informed Plaintiff that she was to change the billing for PREQB. (Docket No. 24 ¶19)

## C. E-MAILS

12. Plaintiff alleges she was threatened by emails Mr. Rodríguez sent to her during his trip to Puerto Rico from December 15 to 19, 2016. (Docket No. 24 ¶21)

13. On February 15, 2017, Plaintiff's supervisor, Scott Padgett, sent her an email as 'a gentle reminder" that all employees were required to be in the office by 9:30AM each day. (Docket No. 24 ¶22 and Exhibit 2(a))

14. Mr. Padgett explained that he was told by his supervisor, Mr. Rodríguez, the Center Director, whom had been visiting Puerto Rico the week prior, that Plaintiff was not arriving at the office until after 9:30AM. (Docket No. 24 ¶23 and Exhibit 2(a))

15. Mr. Padgett removed the SIFTA and Proposal Tracking duties from Plaintiff's EPAP on May 1, 2017 following an exchange of emails in which Plaintiff stated she believed the duties were unfair to her. (Docket No. 24 ¶26)

16. On April 13, 2018, a coworker asked that Plaintiff use a different printer, stating he did not want documents related to cooperators, agreements, meetings, etc. left in the common printers. (Docket No. 24 ¶28 and Exhibit 2 (c))

17. Plaintiff responded in an email, that same day, where she copied Mr. Padgett, that she would comply with this request and requested her own printer. (Docket No. 24 ¶29 and Exhibit 2 (c))

18. On April 16, 2018, Mr. Padgett responded that the Center policy was not to authorize personal printers in most all instances. (Docket No. 24 ¶30)

19. Plaintiff responded "very well then. Thanks for your replies. I just asked Dianne to set me up with that printer, so I can do my printing there" (Docket No. 24, Exhibit 2 (c))

D. **TELEWORK REQUEST**

20. On May 22, 2018 Plaintiff asked to telework for four days from her daughter's apartment in New York City. (Docket No. 24 ¶36 and Exhibit 6 page 2)

21. On May 25, 2018, Mr. Padgett responded, and she was approved to telework one day. (Docket No. 24 ¶37 and Exhibit 6 page 5)

22. On July 26, 2018, Plaintiff requested Mr. Padgett to reconsider and stated the decision of not approving the telework was in retaliation towards Plaintiff. (Docket No. 24 ¶39 and Exhibit 6 page 4)

23. On July 27, 2018, Mr. Padgett responded to Plaintiff by denying retaliation and explaining the reasoning behind his decision to deny the teleworking request. (Docket No. 24 ¶39 and Exhibit 6 page 4)

24. Mr. Padgett explained that the positions he and his employees occupy are administrative and require interaction with people in the office. Additionally, he explained that, as a general rule, he does not approve teleworking for multiple days at a home not listed on their telework agreement. (Docket No. 24 ¶41 and Exhibit 6 page 4)

**E. EEO PROCESS**

25. On April 30, 2017, Plaintiff filed an appeal before the Merit Systems Protection Board (hereinafter, "MSPB"). (Docket No. 24 ¶42)

26. Plaintiff initiated the Equal Employment Opportunity (hereinafter, "EEO" process by contacting an EEO Counselor on July 23, 2018. (Docket No. 33, Exhibit D, Report of Counseling from EEO)

27. Plaintiff filed a EEO formal complaint on November 1, 2018. (Docket No. 33, Exhibit E, Administrative Complaint)

28. The Office of Civil Rights issued a Final Agency Decision on August 15, 2019. (Docket No. 1 at ¶5) and Final Agency Decision (Docket No. 24, Exhibit 10)

29. On August 23, 2019 Plaintiff received the Final Agency Decision which concluded that the discrimination, as claimed, was not proven. (Docket No. 1 ¶5)

**IV.     LEGAL ANALYSIS**

**a. Exhaustion of Administrative Remedies by Plaintiff**

Defendant claims that "[p]laintiff failed to timely exhaust administrative remedies as to her discrimination claim because she filed claims of discrimination before the MSPB a whole year after Defendant notified her that she would not be promoted." (Docket No. 25 at 4) Specifically, Defendant alleges that "[t]he exclusive remedy for a federal employee who claims discrimination or retaliation is Title VII, and the plaintiff must comply with its administrative exhaustion requirements as a precondition to his or her suit." Id. With regards to the time-frame required to exhaust administrative remedies, Defendant alleges the following:

> The MSPB "is an independent, quasi-judicial federal administrative agency established to review civil service decisions." Toussaint v. Department of Veterans Affairs, No. 10–1288 (CVR), 2013 WL 1010787, at *13 (D.P.R. March 13, 2013). "Its appellate jurisdiction is limited to a review of adverse employment actions, which include: a removal, a suspension for more than 14 days, a reduction in grade, a reduction in pay, or a furlough of 30 days or less." Id. "The MSPB also has pendent jurisdiction over discrimination claims brought in connection with an

> 'adverse action' otherwise appealable to it, commonly referred to as a 'mixed case.'" Id. (citing Butler v. West, 164 F.3d 634, 638 (D.C.Cir.1999) (A mixed case is "an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination.").
>
> Where a federal employee claims to have been affected by both an adverse employment action and a related Title VII violation, a so called "mixed case," the employee may elect either to file a complaint with the relevant federal agency's Equal Employment Opportunity ("EEO") department or to assert both claims before the MSPB in order to satisfy the exhaustion of administrative remedies requirement.
>
> Nater v. Riley, 114 F.Supp.2d 17, 24 (D.P.R. 2000) (citing McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir.1995); 5 U.S.C. § 7702; 29 C.F.R. § 1614.403).
>
> "[H]owever, the filing deadline for an MSPB appeal is actually shorter than the 45-day rule for making initial contact with an EEO counselor; an MSPB appeal must be filed within thirty days of the alleged wrongful agency action." Marciniak v. Brennan, No. 16-cv-4178, 2017 WL 8200181, at *4 (N.D.Ill. Dec. 14, 2017) (citing 5 C.F.R. § 1201.154; Mayers v. Merit Sys. Protection Bd., 693 Fed.Appx. 902, 903 (Fed. Cir. 2017)).

Meanwhile, Plaintiff contest that Defendant has mischaracterized the complaint. Specifically, Plaintiff argues that Defendant is mistakenly considering Plaintiff's case as a mixed MSPB appeal. Plaintiff alleges that the complaint "is not a judicial review of a mixed MSPB appeal. Federal jurisdiction in this case is alleged pursuant to Title VII of the Civil Rights Act, not the Civil Service Reform Act." (Docket No. 32 at 2-3) According to Plaintiff, "[u]nder the purview of Title VII of the Civil Rights Act, the administrative remedies a federal employee who alleges discrimination must exhaust prior to filing a judicial complaint include, as a first step, contact with an EEO Counselor of the employer agency within 45 days of the last discriminatory act, 29 CFR 1614.105(a)(1). Then the formal administrative complaint "must be filed within 15 days of receipt of the notice" to file, 29 CFR 1614.106(b). Finally, a judicial complaint can only be filed within 90 days of receipt of the Final Agency Decision, 29 CFR 1614.407(a)." Id. at 3.

Regardless of the discrepancies among the parties related to the applicable time limitation to exercise and administrative remedy; the reality is that in a Title VII case, plaintiff must first exhaust said remedy. Domenech-Rodriguez v. Banco Popular De Puerto Rico, 151 F. Supp. 3d 228, 231

(D.P.R. 2015) Federal employees asserting Title VII claims must exhaust administrative remedies as a precondition to filing a civil action in a federal court. Brown v. Gen. Servs. Admin., 425 U.S. 820, 832, 96 S. Ct. 1961, 1967, 48 L. Ed. 2d 402 (1976). Defendant alleges that Plaintiff claim is time barred because she failed to file an administrative claim before de MSPB within the statutory 30-day period. However, pursuant to the case law cited by Defendant, Plaintiff could choose the forum where she would exhaust administrative remedies. In Nater v. Riley, this District Court the following:

> Where a federal employee claims to have been affected by both an adverse employment action and a related Title VII violation, a so-called "mixed case," the employee **may elect** either to file a complaint with the relevant federal agency's Equal Employment Opportunity ("EEO") department or to assert both claims before the MSPB in order to satisfy the exhaustion of administrative remedies requirement. *See McAdams,* 64 F.3d at 1141; *see also* 5 U.S.C. § 7702; 29 C.F.R. § 1614.403. If the employee chooses to proceed by filing a mixed case complaint before the agency's EEO, and wishes to preserve both claims, the employee must appeal the EEO decision to the MSPB, not to the EEOC; otherwise, the employee will be deemed to have waived the non-discrimination claim. *See Sloan,* 140 F.3d at 1260. Alternatively, the employee may proceed directly to the MSPB without first resorting to the agency's EEO department. *See McAdams,* 64 F.3d at 1141.

Nater v. Riley, 114 F. Supp. 2d 17, 24 (D.P.R. 2000), aff'd, 15 F. App'x 11 (1st Cir. 2001) (emphasis ours)

Thus, even considering Defendant's argument that the instant case was a mixed case appeal, Plaintiff had a right to decide which forum she would exhaust the administrative remedies. Plaintiff's decision as to where she could exhaust the administrative remedies only had an impact on the type of claim that would be waived as a result of choosing one forum over the other. In the instant case, Plaintiff chose to exhaust the administrative remedies before the EEO. Accordingly, Plaintiff initiated the EEO process by contacting an EEO Counselor on July 23, 2018. SUMF #26. On November 1, 2018, she filed an official complaint before the EEO. SUMF #8. A final decision from the agency was received on August 23, 2019. SUMF #30. Finally, Plaintiff filed the instant complaint on November 21, 2019. (Docket No. 1) Thus, Plaintiff filed the instant complaint within the required ninety (90) days from receipt of the EEO's final decision.

However, regardless of Plaintiff's exhaustion of administrative remedies or lack thereof are considered time barred; the Court agrees with the EEO's determination and finds that, for the reasons stated below, Plaintiff was not subject to unlawful employment discrimination.

**b. Prima Facie Case of Discrimination**

Defendant also alleges that Plaintiff's claim warrant dismissal because "she is unable to establish a prima facie case of national origin discrimination." (Docket No. 25 at 6) Meanwhile, Plaintiff contests that Defendant is mistakenly assuming that Plaintiff's national origin discrimination claim is "attached to a failure to promote cause of action, willfully ignoring the hostile work environment cause of action…" (Docket No. 32 at 4) Basically, while Plaintiff alleges the prima facie elements should be those of a hostile work environment, Defendant contest that the elements should be those of a "failure to promote" discrimination standard.

In her complaint, Plaintiff claims that the actions by the "USGS-Caribbean-Florida Water Science Center's management were discriminatory, retaliatory and otherwise in violation of Title VII of the Civil Rights Act, as amended, and other applicable laws and regulations prohibiting discrimination against federal employees." (Docket No. 1 at 18) Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual . . . because of such individual's . . . national origin...."  42 U.S.C. § 2000(e) *et seq*. When considering claims of discrimination under Title VII, the Court has applied the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) burden-shifting framework. See, San Miguel v. Nesco Redondo, S.E., 394 F. Supp. 2d 416, 423 (D.P.R. 2005).

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to show some "legitimate, non-discriminatory reason" for its adverse employment action.  *See* McDonnell Douglas, 411 U.S. at 802.  "[T]he defendant must clearly set forth, through the introduction of

admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993)(internal citations and quotations omitted).

Once the employer meets his burden of production, the burden shifts back to plaintiff to demonstrate that the reasons proffered were merely pretextual, or a "coverup," for a "discriminatory decision." See Feliciano de la Cruz, 218 F.3d 1, 6 (1st Cir. 2000) (internal citations and quotations omitted). At this stage, "plaintiff's burden of producing evidence to rebut the employer's stated reasons for its employment action 'merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination.'" Id. (citing Burdine, 450 U.S. at 256).

The parties believe that different *prima facie* elements apply to the instant case. Defendant argues that this is a case of "failure to promote discrimination based on national origin" (Docket No. 25 at 7) Thus, Defendant argues that Plaintiff must show that she "(1) belongs to a protected class, (2) qualified for the position in question, (3) was not hired; and (4) the job was given to someone outside the protected group with roughly equivalent or lesser qualifications. See Rios Campbell v. U.S. Dep't of Com., CIVIL 15-1189CCC, 2020 WL 1482141 at *3 (D.P.R. Mar. 23, 2020) (citing Rios v. Rumsfeld, 323 F. Supp. 2d 267, 274 (D.P.R. 2004))." Id.

Meanwhile, Plaintiff argues that the prima facie elements that should be considered in the instant case are completely different. Plaintiff argues that the *prima facie* elements to prove a hostile work environment are the following: "(1) that [plaintiff] is a member of a protected class; (2) that [plaintiff] was subjected to unwelcome [discriminatory or retaliatory] harassment; (3) that the harassment was based upon [national origin or prior protected activity]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that [the] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or

abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established ". Rosario Mendez v. Hewlett Packard Caribe BV, 638 F. Supp. 2d 205 (D. Puerto Rico, 2009)." (Docket No. 32 at 4-5)

Plaintiff fails to prove a *prima facie* claim under both standards. Under the "failure to promote" discrimination elements that Defendant alleges apply to the instant case, other than satisfying the first element, that is, that Plaintiff is a member of a protected class due to her Puerto Rican national origin. Plaintiff fails to satisfy the remaining elements to prove a prima facie claim. As Plaintiff stated in the complaint "on April 2016 Plaintiff's position was withdrawn and "put on hold". (Docket No. 1 ¶31) As Defendant correctly argues, "Plaintiff cannot establish that she was qualified "to the position on question" or that the "job was given to someone outside her protected group" because there was no such position to give." (Docket No. 25 at 6-7) The mere fact that there wasn't a position involved automatically renders the third and fourth element inapplicable. Plaintiff alleges that although her GS-9 Program Analyst position (or rather, promotion) was put on hold, Susan Jones (hereinafter, "Ms. Jones") GS- 9 Budget Analyst position was not. Specifically, Plaintiff argues that "the move to unfreeze the position benefited Ms. Jones, who is white, does not live in Puerto Rico, is not Puerto Rican, and works at the same Florida office as Padgett. After the GS-9 position Ms. Jones has been promoted twice during the years 2017 and 2018, and now occupies a GS-11 position as Budget Analyst. Meanwhile, there has been no position available for plaintiff, who is Puerto Rican, and lives in Puerto Rico." (Docket No. 32 7) However, Defendant has provided supporting evidence that proves that the Budget Analyst position was a vacancy, not a new position, wherefore, the Center needed someone to complete the Budget Analyst duties. Additionally, and more importantly, Plaintiff did not apply for the GS-9 Budget Analyst position, as opposed to Ms. Jones who applied and obtained the position. Thus, Plaintiff's comparison to Ms. Jones does not provide any type of discriminatory indication. Ms. Jones and Plaintiff did not apply for the same position, nor did they perform the same duties.

On the other hand, Plaintiff also fails to prove a *prima facie* claim of hostile work environment under the elements she suggests. Other than being a member of a protected class, the Court finds that Plaintiff has failed to set forth a cognizable claim of national origin discrimination. Although it is uncontested that Plaintiff is Puerto Rican, the record lacks evidence showing that Plaintiff was subject to unwelcome harassment. Plaintiff contests that the hostile work environment is composed of more than just emails. Plaintiff attributes the hostile work environment to the following:

> [h]er supervisors' decision to withdraw the Program Analyst position from recruitment, leaving her with no career development, whilst her non-Puerto Rican coworker of the same Center was promoted and advanced. Plaintiff passionately complains of her supervisors' treatment of Puerto Rico and the unjustified change in billing, which came to be known as The Beast. She also complains that under the pretense that she was acquiring experience and knowledge to best qualify her for a career advancing position she had performed the SIFTA and Proposal Tracking duties without pay, and when she demanded equal treatment then the duties were removed in effect curtailing her career advancement. Plaintiff complains that her supervisor was setting her up for failure by keeping her purposefully uninformed and forcing her into hypervigilance. And plaintiff complains of lesser things – the printer refusal, telework – and the increasingly hostile tone of the emails, which in the aggregate and in appropriate context confirm a pattern of hostility."

(Docket No. 32) at 11-12.

Even if assuming that Plaintiff's allegations could be considered harassment based upon her national origin. The Court finds that said harassment does not meet the standard of being "sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment".  In summary, Plaintiff's hostile environment claim can be divided into the following categories: (1) Plaintiff's promotion; (2) billing instructions towards Puerto Rico;(3) allegedly hostile emails and (4) teleworking request.

The Court has reviewed the parties' submissions and finds that no signs of an abusive work environment. With regards to Plaintiff seeking a promotion, Plaintiff admits the promotion was never promised to her by a supervisor. The position was not given to someone else either. Defendant contest there was a hiring freeze due to Puerto Rico's financial crisis. The truth is

Plaintiff has not demonstrated the Court how not getting the promotion constitute a discriminatory act towards her. In fact, the GS-9 Program Analyst position, which Plaintiff seeks, till this day does not exist.

With regards to the billing instructions, the record shows that Plaintiff was ordered to treat Puerto Rico differently for billing purposes. The Court agrees with Defendant that Plaintiff "fails to specify how this order affected the conditions of her employment." (Docket No. 25 at 15) Thus, although Plaintiff considers that the instruction of treating Puerto Rico different for billing purposes was discriminatory, it was not directed at Plaintiff. The Court has also reviewed the emails that Plaintiff considers had a hostile tone and does not agree with Plaintiff that they confirm a pattern of hostility. The Court cannot conclude, as Plaintiff requests, that the emails presented confirm a pattern of hostility. Specifically, the denial of Plaintiff's request to telework give no indication of a retaliation action against Plaintiff. Mr. Padgett explained his reasoning and justified his denial. As to this factor, Mr. Padgett approved one out of the four days that Plaintiff was requesting and approved leave for the three other days while Plaintiff visited her daughter in New York. From the emails provided, the Court cannot surmise that the aggregate of these emails can constitute a hostile work environment. Thus, Plaintiff has not established that the harassment she experienced was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment. Blank allegations do not suffice.

Finally, to establish a claim of unfair retaliation, a plaintiff needs to prove that protected conduct and an adverse employment action are causally linked. *See,* Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005) Plaintiff offered no evidence on causation. Therefore, her retaliation claim also fails.

## V. CONCLUSION

For the reasons elucidated above, the Court hereby **GRANTS** Defendant's *Motion for Summary Judgment* (Docket No. 23). Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September, 2022.

**S/ DANIEL R. DOMÍNGUEZ**

DANIEL R. DOMÍNGUEZ
U.S. District Judge